GEORGE W. BROWN, executor, *vs.* JOSEPH CLOTHEY
& others.

Essex.    November 7, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Devise and Legacy.   Words,* " Glue," "On hand."

On a bill by an executor for instructions the following facts appeared : The plain-
tiff's testator in the seventh clause of his will made this bequest : " I give and
bequeath all the glue (but not the glue stock) which I may leave on hand at
my decease " to a trustee for the benefit of certain beneficiaries.   To a brother
not included in these beneficiaries he made the following bequest : " I give and
bequeath to my said brother all the tools, fixtures and machinery in my glue
factory, and all my personal property of whatever kind or description that at
the time of my death shall be in or on the premises described in section second
of this will [which described the glue factory], excepting the glue, which I have
hereinbefore disposed of in section seven of this will."   It appeared that at the
time of his death, the testator had on hand in his glue factory a large quantity
of glue and also a large quantity of gelatine, worth a little more than the glue.
He also had in the hands of a selling agent in another city another quantity of
gelatine.   Glue and gelatine are made from the same stock and by the same
.process of manufacture, there being no difference between gelatine and common
glue except that gelatine is a higher grade of the same substance.   There was
evidence that, although gelatine and glue are sold in the market under different
names, from the point of view of manufacturers they are both in a broad general
sense glue, and that the manufacture of gelatine as a distinct product for a use
.different from that of common glue had begun in the testator's factory and other
similar factories not very long before the will was made.   There was no men-
tion in the will of gelatine as distinguished from glue.   *Held,* that the word
" glue " included gelatine and that the words " on hand " included the goods
sent away to be sold by the selling agent as well as those at the factory, so that
both quantities of gelatine passed to the trustee.

KNOWLTON, C. J.   This is a bill brought by the executor of
the will of William H. Brown, for instructions.   The first part
of the seventh clause of this will is as follows : " I give and be-
queath all the glue (but not the glue stock) which I may leave
on hand at my decease to said trustee, the said George and his
successors, in trust for the following purposes," etc.   For many
years the testator had been a manufacturer of glue, and at the
time of his death he had on hand in his glue factory two hun-
dred and seventeen barrels of glue worth about $2,800 and three
hundred and twenty gross of gelatine worth a little more than

that sum. He also had in the custody of his selling agents in New York city about one hundred and thirty gross of gelatine. The question is whether this gelatine passed as glue under the seventh clause of the will.

It appeared from uncontradicted evidence that glue and gelatine are made from the same stock and by the same process of manufacture. The last part of this process is boiling in a kettle, through a valve in the bottom of which the liquid is drawn off into shallow pans and allowed to cool. The first drawing, which is the clearest and best, is afterwards broken up or shredded and put up in packages to be sold for cooking and other uses under the name gelatine. The later drawings, which have more impurities, are sold as glue. The building in which this business was carried on was commonly called, and is called by the testator in his will, a glue factory. An intelligent and trustworthy expert of large experience testified that " gelatine is the highest grade of glue," and that he knew no difference between gelatine and common glue, except that gelatine is a higher grade of glue. To an inquiry in reference to a statement that " nearly all gelatine in the market is really made from glue," he answered, " instead of saying that, I should say it is glue."

While the evidence tended to show that these preparations, designed for different uses and put up in different forms, are known and sold in the market under different names, there was much other evidence to indicate that, from the point of view of manufacturers, they are both in a broad, general sense, glue. The evidence tended to show that the manufacture of gelatine, as a distinct product for a use different from that of common glue, was begun in the testator's glue factory and other similar factories not very long before the will was made.

The question is, What did the testator mean by the word "glue" as used in his will? Did he mean the entire finished product of his glue factory, including that prepared for cooking under the name gelatine, or did he mean to limit the gift to that which is commonly sold by dealers under the name glue? The first part of the eighth clause of the will is in these words : " I give and bequeath to my said brother George W. Brown all the tools, fixtures and machinery in my glue factory, and all my

personal property of whatever kind or description that at the time of my death shall be in or on the premises described in section second of this will, excepting the glue, which I have hereinbefore disposed of in section seven of this will," etc. The glue factory is a part of the premises described in section second. These two clauses indicate an intention to separate the finished product, under the name glue, from the glue stock and all other property in the glue factory, and to give the former to a trustee for his nephews and sisters, and the latter to his brother for his own use. Nowhere in the will is there any mention of gelatine, or any suggestion that the product of his glue factory is anything but glue. The single justice found that the word "glue" included the gelatine in the factory, and affirmed the decision of the Probate Court to that effect. This decree of the single justice, made after seeing and hearing the witnesses, we cannot set aside on appeal unless it is plainly wrong. The evidence before us tends to show that it is right.

The gelatine in the custody of the testator's selling agent in New York passed under this seventh clause if it was included in the words, "which I may leave on hand at my decease." It might be argued that "on hand" means at my factory, and does not include goods sent away to be sold by a selling agent. No such argument has been addressed to us, nor has any reason been given why the gelatine which remained unsold in New York should not be covered by this clause, as well as that in the factory.

The single justice, upon the record before him, rightly declined to affirm that part of the decree of the Probate Court which deals with items of money and interest that properly are for adjustment in the executor's account. There seems to be a difference of opinion between counsel as to the effect of his decree in reference to the gelatine in New York. To remove ambiguity it should be amended by substituting the words "referred to in the plaintiffs' bill," for the words, "in the factory of the testator," and with this amendment it should be

*Affirmed.*

*G. C. Abbott,* for the plaintiff.

*R. M. Mahoney & W. H. Niles,* for the defendants.